Case 5:12-cr-00220   Document 1   Filed 11/28/12   Page 1 of 11 PageID #: 1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

FILED
NOV 28 2012
TERESA L. D... ...LERK
U.S. ... Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 5:12-cr-220
                                      18 U.S.C. § 371

DAVID C. HUGHART

## I N F O R M A T I O N

The United States Attorney charges:

### COUNT ONE

(Conspiracy to defraud the United States)

#### Background

At all relevant times:

1. White Buck Coal Company ("White Buck"), a corporation, was registered with the federal Mine Safety and Health Administration (MSHA) as the operator of certain coal mines, including the White Buck #2 mine and the Grassy Creek #1 mine, and, beginning in or around 2008, the Hominy Creek mine (together, the "White Buck Mines" or the "Mines"). The White Buck Mines were located near Leivasy, Nicholas County, West Virginia. The products of the White Buck Mines entered commerce and the products and operations of the White Buck Mines affected interstate commerce. As such, White Buck, the White Buck Mines,

and persons employed at White Buck and the White Buck Mines were subject to the provisions of the Federal Mine Safety and Health Act of 1977 (the "Mine Act") and to the regulations promulgated thereunder. White Buck was a wholly owned subsidiary of Massey Energy Company ("Massey"). Massey, through other wholly owned subsidiaries, also owned and operated other coal mines at various places in the Southern District of West Virginia.

2. MSHA was an agency of the United States and of the United States Department of Labor (DOL), and was responsible for the enforcement of the Mine Act and the promulgation and enforcement of federal regulations related to mine safety and health, codified in Title 30 of the Code of Federal Regulations. These regulations included certain mandatory mine health and safety standards.

3. Among the mandatory mine health and safety standards promulgated and enforced by MSHA and applicable to the White Buck Mines and to other coal mines owned by Massey were the following:

    a. In any part of a coal mine where coal was actively being extracted, an approved ventilation control device (typically specialized, heavy material called line brattice or line curtain, which is used to direct the flow of air in mines) had to extend to

within 10 feet, or some other distance prescribed by MSHA, of the deepest point of mine penetration. 30 C.F.R. § 75.330. This requirement is designed in part to ensure that enough air reaches the deepest point of mining to prevent dangerous buildups of explosive gases and dusts, as well as the inhalation of coal dust, a health hazard.

b.  Coal dust and loose coal fragments were required to be kept cleaned up and not allowed to accumulate. 30 C.F.R. § 75.400. This requirement was intended to prevent accumulations of combustible material that could fuel an explosion.

c.  Rock dust — incombustible, pulverized limestone spread in coal mines to prevent explosions — was required to be applied in most areas of a coal mine to within at least 40 feet, or some other distance prescribed by MSHA, of any working face. 30 C.F.R. § 75.402. At every location where rock dust was required, at least 65% of the total dust present (rock dust, coal dust, and other dust) was required to be incombustible. 30 C.F.R. § 75.403. In certain areas of a coal mine, at least 80% of the total dust present was required to be incombustible. Id.

4. As part of MSHA's regulatory and enforcement efforts, and pursuant to its statutory authority, MSHA mine inspectors made periodic, unannounced inspections of the White Buck Mines and other coal mines owned by Massey to ensure compliance with mine safety and health laws and to impose penalties for violations of those laws. Violators were subject to civil and criminal penalties under the Mine Act. During these inspections, MSHA mine inspectors would and did issue citations, which penalized violations of mine health and safety laws but allowed the affected mine to continue operating, and orders, which were rarer than citations and which, in addition to penalizing a violation of mine safety and health laws, required the affected mine or a part of the affected mine to stop operating until the violation was corrected. It was prohibited for any person to give advance warning of an MSHA inspection.

5. Mine safety and health laws were routinely violated at the White Buck Mines and at other coal mines owned by Massey, in part because of a belief that consistently following those laws would decrease coal production. These violations included violations of the mandatory mine health and safety standards described in paragraph 3. If these routine mine health and safety violations were detected by MSHA, the resulting citations and orders could result in coal production being stopped until

4

the violations were corrected, in addition to civil monetary penalties as well as to criminal penalties including fines or imprisonment. Furthermore, the issuance of citations and orders by MSHA, particularly certain kinds of serious citations and orders, moved the affected mine closer to being classified as a mine with a pattern or potential pattern of violations. That classification would have resulted in increased scrutiny of the affected mine by MSHA, the issuance of additional serious citations and orders, and more frequent mandatory stoppages of coal production as a result of MSHA regulatory actions.

### The Defendant

6. Defendant DAVID C. HUGHART ("HUGHART") was President of Massey's Green Valley resource group during the period from at least in or around 2000 through in or around March 2010. The Green Valley resource group was an organizational unit of Massey that controlled the White Buck Mines. As President of the Green Valley resource group, HUGHART exercised control and authority over all aspects of the operations of the White Buck Mines. HUGHART also served as a director of White Buck from 2003 through 2010 or later.

### The Conspiracy

7. Beginning no later than in or around 2000 and continuing through and including around March 2010, at or near

Leivasy, Nicholas County, West Virginia, within the Southern District of West Virginia, and elsewhere within the Southern District of West Virginia, HUGHART, together with others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together with each other to defraud the United States and an agency thereof, to wit, to hamper, hinder, impair, impede, and obstruct by trickery, deceit, and dishonest means, the lawful and legitimate functions of DOL and its agency, MSHA, in the administration and enforcement of mine safety and health laws at the White Buck Mines and at other coal mines owned by Massey.

### Objects of the Conspiracy

8. The objects and purposes of the conspiracy were to hamper, hinder, impair, impede, and obstruct the lawful government functions of DOL and MSHA in the administration and enforcement of mine safety and health laws at the White Buck Mines and at other coal mines owned by Massey.

### Manner and Means

9. It was a part of this conspiracy that HUGHART, together with others known and unknown, would and did give and authorize and cause to be given to persons at the White Buck Mines and at other coal mines owned by Massey advance warning of MSHA inspection activities, knowing and intending that the

persons receiving this advance warning would conceal and cover up violations of mine safety and health laws that otherwise would result in citations and orders issued by MSHA.

10. It was further a part of this conspiracy that HUGHART, together with others known and unknown, upon receiving advance warning of MSHA inspection activities at the White Buck Mines and at other coal mines owned by Massey, would and did conceal and cover up, and authorize and cause the concealing and covering up of, violations of mine safety and health laws that otherwise would result in citations and orders issued by MSHA.

Overt Acts

11. In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of West Virginia:

    a. On many occasions on various dates between around 2000 and around March 2010, HUGHART, together with others known and unknown, gave and authorized and caused to be given to persons at the White Buck Mines advance warning of MSHA inspection activities, knowing and intending that the persons receiving this advance warning would conceal and cover up violations of mine safety and health laws that otherwise would result in citations and orders issued by MSHA.

7

b.  On many occasions on various dates between around 2000 and around March 2010, HUGHART, together with others known and unknown, upon receiving advance warning of MSHA inspection activities at the White Buck Mines, concealed and covered up, and authorized and caused the concealing and covering up of, violations of mine safety and health laws that otherwise would result in citations and orders issued by MSHA.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

### (Conspiracy)

12. The United States Attorney re-alleges paragraphs 1 through 11 as if fully set forth herein.

### The Conspiracy and Its Objects

13. From in or about 2000 and continuing thereafter until about March 2010, at or near Leivasy, Nicholas County, West Virginia, within the Southern District of West Virginia, and elsewhere within the Southern District of West Virginia, HUGHART did conspire with others known and unknown to commit offenses against the United States in violation of 30 U.S.C. § 820(c), that is, knowingly conspired for directors, officers, and agents of known corporate operators of the White Buck Mines and other coal mines owned by Massey to knowingly authorize, order, and carry out violations of mandatory mine health and safety standards, which violations constituted violations of mandatory mine health and safety standards by known corporate operators of the White Buck Mines and other coal mines owned by Massey.

14. Among the objects of the conspiracy was to violate and cause the violation of mandatory mine health and safety standards at the White Buck Mines and at other coal mines owned by Massey.

### Manner and Means

15. It was a part of this conspiracy that HUGHART, together with others known and unknown, would and did knowingly authorize, order, and carry out violations of mandatory mine health and safety standards at the White Buck Mines and at other coal mines owned by Massey, including violations of the mandatory mine health and safety standards described above in paragraph 3.

### Overt Acts

16. In furtherance of the conspiracy, and to effect the illegal objects thereof, on many occasions and various dates between around 2000 and around March 2010, at or near Leivasy, Nicholas County, West Virginia, within the Southern District of West Virginia, HUGHART, together with others known and unknown, did knowingly authorize, order and carry out violations of mandatory mine health and safety standards at the White Buck Mines, including violations of the mandatory mine health and safety standards described above in paragraph 3.

In violation of Title 18, United States Code, Section 371.

                    UNITED STATES OF AMERICA

                    R. BOOTH GOODWIN II
                    United States Attorney

By: _____
     STEVEN R. RUBY
     Assistant United States Attorney

11